UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DINO MARTI,

     Plaintiff,

v.

ST. ANTHONY'S HOSPITAL, INC.,

     Defendant.

CASE NO.: 8:19-cv-01647

## **COMPLAINT**

Plaintiff DINO MARTI, by and through undersigned counsel, hereby sues ST. ANTHONY'S HOSPITAL, INC., a Florida Not for Profit Corporation ("Defendant"), for declaratory and injunctive relief pursuant to Title III, 42 U.S.C. § 12181-12189 of the Americans with Disabilities Act ("ADA"), 28 C.F.R. Part 36, and Florida Statutes § 394.451, *et seq*.; for damages pursuant to Florida Statute § 394.459(10); and for damages for the common law tort of battery. Plaintiff alleges:

## **JURISDICTION AND VENUE**

1. Pursuant to 28 U.S.C. § 1331 and 28 U.SC. § 1343, this Court has been vested with federal question jurisdiction over actions arising from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See also* 28 U.S.C. §§ 2201 and 2202 as well as the 2010 ADA Standards.

2. The remedies provided by Chapter 760 of the Florida Statutes are not exclusive, and state administrative remedies need not be exhausted in connection with suits brought under Title III of the ADA. Filing suit, even without prior notice to the defendant or state agencies, constitutes a valid legal recourse to redress discrimination that prevents the disabled from "fully participat[ing] in all aspects of society." 42 U.S.C. § 12101(a)(1-4). Therefore, Plaintiff has exhausted all administrative remedies required by law.[1]

3. Venue is properly in the Middle District of Florida because the Defendant is located in this district and conducts business within this district, and all of the events or omissions giving rise to Plaintiff's claims occurred and are occurring within this district.

## **PARTIES**

### **Plaintiff**

4. Plaintiff currently resides in Tampa, Florida.

---

[1] In *Medina-Rodriguez v. Fernandez Bakery, Inc. et al*, Civil No. 16-2578 (FAB) (D.P.R. June 14, 2017), the Court denied the defendant's motion to dismiss for, among other things, alleged failure to exhaust administrative remedies. The majority of courts addressing this issue have concluded that Title III of the ADA does not incorporate the notice requirement of Title II of the Civil Rights Act. *See, e.g., Williams v. Hermanson Family LP*, 1997 WL 33471624 at 3-4; *Botosan v. Paul McNally Realty*, 216 F. 3d 827, 831 (9th Cir. 2000) ("[a] plaintiff in a private Title III action is not required to provide any notice to any state or local agency as a prerequisite to filing suit"); *Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 54 (3d Cir. 2003) ("[t]he District Court here adopted the same reasoning [in *Botosan*], and we will do so as well"); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062, 1064 (C.D. Cal 2000) ("[b]y its express terms, the ADA adopts only Section 2000a-3(a), which says nothing about notice or exhaustion of remedies"); *Guzman v. Denny's Inc*, 40 F. Supp. 2d 930 (S.D. Ohio 1999) ("[t]o hold that the entirety of § 2000a-3 is adopted, is to impermissibly render superfluous the explicit textual reference to § 2000a-3(a)"); *Walker v. Asmar Ctr., LLC*, 2011 WL 5822394 at *6 (E.D. Mich Nov. 15, 2011) (agreeing with *Guzman* and finding plaintiff was not required to exhaust administrative remedies).

5. Plaintiff was held by Defendant for an involuntary mental health examination under the guise of the Florida Mental Health Act of 1971, Florida Statutes § 394.451 *et seq*., commonly known as "the Baker Act." Plaintiff thus suffers from a "qualified disability" under the ADA. Plaintiff is regarded as having a mental impairment pursuant to 42 U.S.C. § 12012(1)(c) and 42 U.S.C. § 3602(h)(3) because he was perceived as having a mental impairment by Defendant for the purpose of forcibly detaining him for examination.

6. At the time of Plaintiff's visit to the premises of St. Anthony's Hospital, Inc. ("the Premises"), Plaintiff was regarded as having a "qualified disability" under the ADA and was therefore required to be notified of and provided with his rights as a patient, including the right to have a patient healthcare representative pursuant to Florida Statutes § 394.4597(2) and the right to express and informed consent to treatment pursuant to Florida Statutes § 394.459(3) and Article I, section 23 of the Florida Constitution.

7. Plaintiff personally visited the Premises but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Premises even though Plaintiff was a "bona fide" patron.

8. In this context, Plaintiff's "bona fide" patron status results from his dual motivation to both avail himself of the goods and services of Defendant's establishment and also to verify Defendant's compliance with the ADA. "Such dual

motivation…suffice[s] to make the plaintiff a 'bona fide' patron." *See Molski v. Price*, 224 F.R.D. 479, 484 (C.D. Cal. 2004); *see also Clark v. McDonald's Corp*., 213 F.R.D. 198, 202 (D.N.J 2003); *contra Nat'l Alliance for Accessibility, Inc. v. Rite Aid of N.C., Inc*., No 1:10CV932, 2011 U.S. Dist. LEXIS 109609, at *18 (M.D.N.C. Sept. 27, 2011).

9. Plaintiff has suffered irreparable harm, humiliation, degradation, and discrimination in violation of his civil rights through Defendant's policies and practices of discrimination on the basis of his disability or perceived disability.

10. Between July 28, 2018 and August 08, 2018, and at all times relevant, Plaintiff was denied full and equal access to and full and equal enjoyment of the Premises because he was denied a patient healthcare representative for the entirety of his visit and was denied express and informed consent to treatment, including express and informed consent to the administration of psychotropic medications, throughout his visit.

11. Plaintiff is continuously aware of the violations at the Premises and is aware that is would be a futile gesture to return to the Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

12. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

13. Plaintiff experiences a realistic, credible, existing, and continuing threat of discrimination from Defendant's noncompliance with the ADA at the Premises. Plaintiff would like to be able to patronize the Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but he is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Premises until corrective measure are taken at the Premises to eliminate the discriminatory conditions and to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than able-bodied individuals.

**<u>DEFENDANT</u>**

14. Defendant, ST. ANTHONY'S HOSPITAL, is a Florida Not for Profit Corporation and is authorized to conduct and is conducting business within the State of Florida.

15. Defendant may be served through its registered agent, BayCare Health System, Inc., 2985 Drew Street, Clearwater, Florida 33759.

16. Defendant is the owner of the commercial property located at 1108 7th Avenue N., St. Petersburg, Florida 33705, which has a public street address of 1200 7th Avenue N., St. Petersburg, Florida 33705.

17. Therein, Defendant operates a hospital known as St. Anthony's Hospital (referenced herein as "the Premises" or "subject facility").

18. The subject facility is a licensed hospital pursuant to § 395.003(5)(a), Fla. Stat., and "[a]dherence to patient rights, standards of care, and examination and placement procedures provided under part I of chapter 394 shall be a condition of licensure for hospitals providing voluntary or involuntary medical or psychiatric observation, evaluation, diagnosis, or treatment."

19. Defendant is a "Facility" as defined by § 394.455(16), Fla. Stat.

20. The subject facility is a hospital that is open to the general public and is therefore a place of "public accommodation" pursuant to 42 U.S.C. § 12181 *et seq.* and 28 C.F.R. § 36.302 *et seq.*

21. As the owner or operator of the subject facility, Defendant is required to comply with the ADA.

22. Under 28 C.F.R. § 36.202(a), "A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation."

23. Under 28 C.F.R. § 36.206(c), conduct prohibited by this section include but are limited to:

(1) Coercing an individual to deny or limit the benefits, services, or advantages to which he or she is entitled under the Act or this part;

(2) Threatening, intimidating, or interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation;

(3) Intimidating or threatening any person because that person is assisting or encouraging an individual or group entitled to claim the rights granted or protected by the Act or this part to exercise those rights; or

(4) Retaliating against any person because that person has participated in any investigation or action to enforce the Act or this part.

24. Under 28 C.F.R. § 36.201(a), "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation."

25. Failure to comply with these requirements constitutes a violation of the ADA.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

Plaintiff realleges and incorporates by reference the allegations stated in paragraphs 1.-25. above.

26. On July 26, 1990, Congress enacted the ADA, 42 U.S.C. § 12101 *et seq*. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if the establishment had ten or fewer

employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. § 12182; *see also* 28 C.F.R. § 36.508(a).

27. Congress found, among other things, that:

a.) Some 43,000,000 Americans have one or more physical or mental disabilities, and this number will increase as the population continues to age;

b.) Historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem requiring serious attention;

c.) Discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, health services, voting, and access to public services and public facilities;

d.) Individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, benefits, or other opportunities; and

e.) The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1-3), (5), and (9).

28. Congress explicitly stated that the purpose of the ADA was to:

a.) Provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

29. Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104, and the 2010 ADA Standards, the Premises is a place of public accommodation covered by the ADA by the fact it provides services to the general public and must be in compliance therewith.

30. Defendant has discriminated against and continues to discriminate against Plaintiff and others who are similarly situated by denying access to and full and equal enjoyment of goods, services, facilities, privileges, advantages, and/or accommodations at the Premises, as prohibited by 42 U.S.C. § 12182 and 42 U.S.C. § 12101 *et seq.*; by failing to designate a patient healthcare representative to incompetent patients as required by § 394.4597(2), Fla. Stat.; and by failing to obtain express and informed consent to administer treatment as required by § 394.459(3), Fla. Stat., all in violation of 42 U.S.C. § 12182(b)(2)(A)(i) and (ii).

31. Plaintiff has visited the Premises and has been denied full and safe equal access to the facilities, and he has therefore suffered an injury-in-fact.

32. Plaintiff currently lives in close proximity to the Premises. *See Houston v. Marod*, 733 F. 3d 1323, 1336 (11th Cir. 2013) ("Plaintiff…lives in the next county. He does not live hundreds of miles away…with no particular reason to return.").

33. Plaintiff has an ongoing disability and may need to return and enjoy the goods or services at the Premises in the near future, and he expects to have independent visits for other personal reasons. Plaintiff furthermore intends to visit the premises annually to verify its compliance or non-compliance with the ADA and its maintenance of the accessibility of the features of the Premises.

34. Defendant's failure and refusal to provide persons with disabilities with full and equal access to its facilities only serves to further the discrimination and injury endured by Plaintiff.

35. Plaintiff is presently deterred from visiting Defendant's establishment, known to be out of compliance with the ADA, which also constitutes an actual and present injury as surely as future visits to the same location constitute a threatened and imminent injury. *Id.* at 1337 ("The likelihood of [plaintiff] suffering future injury thus is not contingent upon events that are speculative or beyond [his] control. Rather, the cause of the injury continues to exist, and the likelihood of [plaintiff] encountering that cause in the future depends only on [plaintiff's] own volition.").

36. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R. § 36; *see also* the 2010 ADA Accessibility Guidelines ("ADAAG"), 28 C.F.R. Part 36, under which the Department may obtain civil penalties of up to $55,000 for the first violation and $110,000 for each subsequent violation.[2]

37. Section 394.459(3)(a), Fla. Stat., entitled "Right to Express and Informed Patient Consent," states:

---

[2] As of April 01, 2014, the civil penalties were increased, based on inflation, from $55,000 to $75,000 for the first violation and from $110,000 to $150,000 for subsequent violations. See 28 C.F.R. § 36 and § 85.

1. Each patient entering treatment shall be asked to give express and informed consent for admission or treatment. If the patient has been adjudicated incapacitated or found to be incompetent to consent to treatment, express and informed consent to treatment shall be sought instead from the patient's guardian or guardian advocate…

2. Before giving express and informed consent, the following information shall be provided and explained in plain language to the patient, or to the patient's guardian if the patient is 18 years of age or older and has been adjudicated incapacitated, or to the patient's guardian advocate if the patient has been found to be incompetent to consent to treatment, or to both the patient and the guardian if the patient is a minor: the reason for admission or treatment; the proposed treatment; the purpose of the treatment to be provided; the common risks, benefits, and side effects thereof; the specific dosage range for the medication, when applicable; alternative treatment modalities; the approximate length of care; the potential effects of stopping treatment; how treatment will be monitored; and that any consent given for treatment may be revoked orally or in writing before or during the treatment period by the patient or by a person who is legally authorized to make health care decisions on behalf of the patient.

38. Rule 65E-5.170(2) of the Florida Administrative Code ("F.A.C."), entitled

"Right to Express and Informed Consent," states:

(a) Express and informed consent, including the right to ask questions about the proposed treatment, to receive complete and accurate answers to those questions, and to negotiate treatment options, shall be obtained from a person who is competent to consent to treatment. If the person is incompetent to consent to treatment, such express and informed consent shall be obtained from the duly authorized substitute decision-maker for the person before any treatment is rendered, except where emergency treatment is ordered by a physician for the safety of the person or others. Chapter 394, Part I, F.S., and this rule chapter govern mental health treatment…

(b) A copy of information disclosed while attempting to obtain express and informed consent shall be given to the person and to any substitute decision-maker authorized to act on behalf of the person.

12

(c) When presented with an event or an alternative which requires express and informed consent, a competent person or, if the person is incompetent to consent to treatment, the duly authorized substitute decision-maker shall provide consent to treatment, refuse consent to treatment, negotiate treatment alternatives, or revoke consent to treatment.

39.   The right to express and informed consent required by § 394.459(3)(a), Fla. Stat., and Rule 65E-5.170(2), F.A.C., ensures equal access to and full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations located on the premises of the facility.

40. Section 394.4597(2), Fla. Stat., states:

(a) At the time a patient is admitted to a facility for involuntary examination or placement, or when a petition for involuntary placement is filed, the names, addresses, and telephone numbers of the patient's guardian or guardian advocate, or representative if the patient has no guardian, and the patient's attorney shall be entered in the patient's clinical record.

(b) If the patient has no guardian, the patient shall be asked to designate a representative. If the patient is unable or unwilling to designate a representative, the facility shall select a representative.

(c) The patient shall be consulted with regard to the selection of a representative by the receiving or treatment facility and shall have authority to request that any such representative be replaced.

41.  The designation of a patient healthcare representative ensures that the patient receives notice of all available goods and services within the facility and has equal access to and full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations located within the premises.

42. Despite Plaintiff's attempts to fully and equally participate in the goods and services offered at the facility, Defendant utilized a tactic of historically oppressive regimes by refusing to appoint a patient representative who could relay notice and guidance to Plaintiff, by refusing to provide Defendant any notice of his right to appointment of a representative, and by refusing to obtain express and informed consent from Plaintiff or his proxy to administer treatment or medications. Defendant, knowing or perceiving that Plaintiff had a mental disability, effectively did whatever they wished to do to Plaintiff with complete disregard for applicable state and federal laws and regulations.

43. On August 7, 2018, a volunteer working on behalf of Plaintiff outside of the subject facility notified multiple facility staff and administrators that Plaintiff's right to have a patient representative was being infringed. Nevertheless, Defendant continued to hold Plaintiff yet another day without providing a patient healthcare representative. This letter is attached hereto as Exhibit A.

44. Any time Plaintiff questioned why he was in the facility or asked to exercise his rights as a patient, he was administered heavy-duty neuroleptic medication without any effort by Defendant to obtain express and informed consent therefor, and this was done to avoid having to provide Plaintiff with full and equal enjoyment of the goods and services offered at the subject facility.

45. After Plaintiff left the facility on August 08, 2018, he filed a complaint with the Agency for Health Care Administration (AHCA), which conducted an unannounced inspection of the Premises on September 13, 2018 and confirmed the ADA violations at the subject property. Findings based on the inspection demonstrate that Defendant is in violation of 42 U.S.C. § 12182 *et seq*. and the 2010 ADAAG guidelines and is discriminating against Plaintiff as a result of, *inter alia*, the following specific violations:

a. Failing to obtain express and informed consent to administer treatment, including failure to explain the information required to obtain express and informed consent set forth in § 394.459(3), Fla. Stat., in violation of Rule 65E-5.170(1)(d)-(7), F.A.C.

b. Forcibly administering injections to Plaintiff without obtaining consent of his proxy or following the strict requirements to administer Emergency Treatment Orders set forth in Rule 65E-5.1703, F.A.C.

c. Failing to designate a patient healthcare representative in violation of § 394.4597(2), Fla. Stat.

d. Failing to create, maintain, and implement an employee and contractor training plan to ensure compliance with applicable statutes and rules, in violation of Rule 65E-5.330(4), F.A.C.

This inspection report is attached hereto as Exhibit B.

46. By failing to obtain express and informed consent from Plaintiff or his proxy and by failing to designate a patient representative for Plaintiff, Defendant denied access to full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations located at the Premises.

47. The violations present at Defendant's facility create a hazard to Plaintiff's mental and physical safety.

48. The violations present at Defendant's facility infringe on Plaintiff's right to travel free of discrimination. Plaintiff is deprived of and deterred from the meaningful choice of freely visiting the same accommodations readily available to the general public.

49. Plaintiff has suffered and continues to suffer frustration and humiliation as the result of the discriminatory conditions present at Defendant's facility. By continuing to operate a place of public accommodation with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives him the full and equal enjoyment of the goods, services, facilities, privileges, and accommodations available to the general public.

50. By maintaining a public accommodation with ongoing ADA violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

51. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover

attorney's fees, costs, and litigation expenses from Defendant pursuant to 42 U.S.C. § 12205 and 28 C.F.R. 36.505.

52. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order requiring Defendant to alter Defendant's establishment to make its facilities readily accessible and equally usable to Plaintiff and all other persons with disabilities as defined by the ADA, or by closing the facility until such time as the Defendant cures its violations of the ADA.

53. Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

**WHEREFORE**, Plaintiff demands judgment against Defendant and respectfully request the following injunctive and declaratory relief:

(a) That the Court issue a Declaration that the Defendant is in violation of the ADA and an Order that the building and the attendant business (hospital) therein be closed to the public until such time that they are deemed by this Court to be accessible and in compliance with Florida Statute § 395.003(5);

(b) In case of default resulting from Defendant failing to file any paper or pleading as required by law, that the Court issue an Order enjoining Defendant from further operating or continuing operations until such time as Defendant demonstrates that it is in compliance with the requirements of the ADA in its business operations;

(c) That the Court enter an Order directing Defendant to evaluate and make reasonable modifications to its policies, practices, or procedures if such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individual with disabilities, in order to safeguard that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals.

(d) That the Court award reasonable attorney's fees, costs, and litigation expenses (including but not limited to court costs and any expert fees) pursuant to 42 U.S.C. § 12205.

(e) That the Court award such other and further relief as it deems necessary, just, and proper.

## COUNT II – VIOLATIONS OF F.S. § 394.459

Plaintiff realleges and incorporates by reference the allegations state in paragraphs 1.-19. and 37.-39. above.

### Violation of F.S. 394.459(3) – Right to Express and Informed Consent

54. Pursuant to Florida Statute § 394.459(10):

Any person who violates or abuses any rights or privileges of patients provided by this part is liable for damages as determined by law. Any person who acts in good faith in compliance with the provisions of this part is immune from civil or criminal liability for his or her actions in connection with the admission, diagnosis, treatment, or discharge of a patient to or from a facility. However, this section does not relieve any person from liability if such person commits negligence.

18

55. Defendant negligently, reckless, or intentionally failed to comply with § 394.459(3), Fla. Stat. ("Express and Informed Patient Consent").

56. Section 394.4598, Fla. Stat., sets forth an order of appointment of proxy decisionmakers to provide express and informed consent on behalf of a patient who has been deemed incompetent to provide express and informed consent to his or her own treatment. For Plaintiff, this statutory order of appointment would require the appointment of his mother as his proxy decisionmaker.

57. Defendant's doctors and staff designated Plaintiff incompetent to consent to his own treatment soon after Plaintiff's arrival at the facility but failed to designate his mother as his proxy healthcare decisionmaker. Defendant's doctors and staff were aware that Plaintiff's mother was available and heavily involved in Plaintiff's care, and their decision to not appoint Plaintiff's mother was deliberate and intentional.

58. Thereafter, doctors and employees of Defendant repeatedly administered treatment and medication to Plaintiff without receiving any consent, let alone express and informed consent, from Plaintiff's statutorily-designated proxy decisionmaker.

59. Defendant is vicariously liable for its employees' unlawful decision to not appoint Plaintiff's mother as his proxy and for their repeated administration of

treatment and medication without obtaining express and informed consent, in violation of § 394.459(3), Fla. Stat., through a theory of *respondéat superior*.

60. Defendant is vicariously liable for its doctors' and other contracted staff's decision to not appoint Plaintiff's mother as his proxy and for their repeated administration of treatment and medication without obtaining express and informed consent, in violation of § 394.459(3), Fla. Stat., because they were acting as apparent or actual agents of Defendant or were engaged in furthering nondelegable duties of Defendant.

## B. Violation of F.S. 394.459(1) – Right to Patient Dignity

61. Section 394.459(1), Fla. Stat., states:

> RIGHT TO INDIVIDUAL DIGNITY.—It is the policy of this state that the individual dignity of the patient shall be respected at all times and upon all occasions, including any occasion when the patient is taken into custody, held, or transported… A person who is receiving treatment for mental illness *shall not be deprived of any constitutional rights*. (Emphasis supplied.)

62. Article I, Section 23 of the Florida Constitution (commonly known as Florida's "Right of Privacy") states, "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." This Right of Privacy has long been construed by the Florida courts to include a person's right to make medical decisions, either on his own behalf or through a proxy medical decisionmaker in the event the individual is incompetent to make his own medical decisions. *See John F. Kennedy Memorial*

*Hosp., Inc. v. Bludworth*, 452 So. 2d 921, 923-4 (Fla. 1984). Thus the right to be free from unwanted medical treatment, and the right to consent to treatment before it is administered, is considered a constitutional right of all Florida citizens.

63. Florida furthermore recognizes that when an individual requires a proxy decisionmaker due to incompetence, that proxy is to use "substituted judgment" rather than a "best interests of the patient" method of decision-making. *Id.* at 926.

64. Defendant, by refusing to appoint Plaintiff's mother – who was familiar with Plaintiff's medical needs and desires and was in the best position to utilize substituted judgment on behalf of Plaintiff – deprived Plaintiff of his Right to Privacy as set forth in Article I, section 23 of the Florida Constitution, as construed by the Florida courts.

65. Defendant is vicariously liable for its employees' violations of Plaintiff's constitutional Right to Privacy and right to dignity pursuant to § 394.459(1), Fla. Stat., through a theory of *respondéat superior*

66. Defendant is vicariously liable for the violations of Plaintiff's constitutional Right to Privacy and right to dignity pursuant to § 394.459(1), Fla. Stat., committed by its doctors and other contracted staff because they were acting as apparent or actual agents of Defendant or were engaged in furthering nondelegable duties of Defendant.

67. As a result of Defendant's violations of Plaintiff's rights under § 394.459(1) and (3), Fla. Stat., Plaintiff has suffered damages to include monetary damages, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, and other negative emotions, as well as suffering from unjustified and abusive restriction of his liberty.

**WHEREFORE**, Plaintiff demands judgment against Defendant and respectfully requests that the Court:

(a) Award Plaintiff damages pursuant to § 394.459(10), Fla. Stat.;

(b) Award Plaintiff costs of this action and prejudgment interest; and

(c) Grant all other relief this Court deems just and proper.

## <u>COUNT III – BATTERY</u>

Plaintiff realleges and incorporates by reference the allegations stated in paragraphs 1. through 19. and 54. through 60. above.

68. On multiple occasions between August 01 and August 08, 2018, employees and agents of Defendant forcibly injected Plaintiff with medication against his will and without obtaining consent of Plaintiff or his healthcare proxy, and without having documentation or justification to permit the administration of Emergency Treatment Orders.

69. Additionally, on or about August 05, 2018, one or more staff members of Defendant hit, kicked, punched, or otherwise physically battered Plaintiff against his

will and without any medical or legal justification. As a result, Plaintiff suffered two black eyes.

70.  On Plaintiff's discharge summary, the doctor casually noted "two black eyes" of Plaintiff. Nowhere else in Plaintiff's paperwork, records, or nurse's or doctor's notes recording his stay at Defendant's facility is there any mention of how Plaintiff managed to leave Defendant's facility with two black eyes.

71. Plaintiff has suffered physical injury, mental anguish, and humiliation as a result of these batteries.

**WHEREFORE**, Plaintiff demands judgment against Defendant and respectfully requests the Court to:

(a) Award Plaintiff damages;

(b) Award Plaintiff costs of this action and prejudgment interest; and

(c) Grant all other relief which this Court deems just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands trial by jury on all counts.

Respectfully submitted this 8th day of July, 2019.

Kendra Parris, Esq.
Fla. Bar No. 076524
PARRIS LAW, P.A.
7065 Westpointe Blvd., Ste. 317
Orlando, FL 32835
(407) 706-3967 (office)

(407) 523-9353 (fax)
Primary: info@parrislaw.org
Secondary: parrislawpa@gmail.com
*Counsel for Plaintiff Dino Marti*

# Your Rights While Receiving Mental Health Services

*The following rights are guaranteed to you under Florida law. These rights will be fully explained to you upon admission to this facility.*

## Individual Dignity
✓ You have the right to be treated respectfully and to not be abused.
✓ You have the right to move freely within this facility unless your safety is at risk or your movemen has been restricted by a judge.
✓ You have the right to reasonable accommodations under the Americans with Disabilities Act (ADA).

## Designation of a Representative
✓ You will be asked to identify a person that we can contact in case of emergency.
✓ You may identify a person to receive notice that you are here in this facility.
✓ If you do not, or cannot, choose a representative, one will be selected for you.

## Communication
✓ You have the right to talk privately by phone and during visiting hours, and can receive and send private mail. This facility is required to develop reasonable rules about visiting hours, mail and the use of telephones.
✓ If your access to the phone, mail, or visitation is restricted, you will be given a written notice that includes the reasons for the restriction. The restriction must be reviewed by the physician at least every 7 days.
✓ You have the right to contact your attorney at any time.
✓ You have the right to use a phone at any time for the purpose of reporting abuse to the Florida Abuse Hotline, or to Disability Rights Florida.

## Confidentiality of Information and Records
✓ Information about your stay in this facility is private and may not be released without your consent (or the consent of your guardian, guardian advocate, or health care surrogate/proxy, if you have one) except under certain instances.
✓ You have the right to see your clinical record, unless this is determined to be harmful to you by your physician.

## Treatment
✓ You have the right to receive the least restrictive, most appropriate and available treatment in this facility.
✓ You will get a physical exam within 24 hours of arrival.
✓ You will be asked to help develop a treatment plan that meets your needs.

## Complaints
✓ You have the right to file an internal complaint and to receive a response within 24 hours of the conclusion of the investigation (may take up to 7 days).

## Advance Directives
✓ You have the right to prepare a document, when competent to do so, that lists the mental health care that you want or don't want, and to name a person that can make decisions for you if you are unable to make those decisions for yourself.

## Informed Consent
✓ Before treatment begins, you will be given information about the purpose of the treatment, the common side effects of medication you receive, alternative treatments, and the approximate length of stay at this facility.
✓ You (or your guardian, guardian advocate, or health care surrogate/proxy) may withdraw your consent to treatment at any time.

## Clothing and Personal Effects
✓ You have the right to keep your clothing and personal~belongings unless they are removed for safety or medical reasons.
✓ If your belongings are taken from you, an inventory of the items will be prepared and given to you to sign. Your items will be returned to you or your representative upon your discharge or transfer from this facility.

## Right to Contact the Court
✓ You, or your representative, have the right to ask the Court to review the following:
• The reason and legality of your detention in this facility.
• A denied legal right or privilege.
• A procedure that is not being followed.

## Voting
✓ You have tbe right to register to vote and to cast your vote in any election unless the court has removed this right from you.

## Discharge
✓ If you request discharge (and you are voluntarily admitted), your doctor will be notified and you will be discharged within 24 hours from a community facility, or within 3 working days from a state hospital, unless you change your mind or you meet the criteria for involuntary placement.
✓ You must be released within 72 hours of arrival at the facility unless you are on voluntary status. If you meet the criteria for involuntary placement, a petition must be filed with the court within 72 hours of arrival, or 2 working days of your transfer from voluntary to involuntary status.
✓ You have the right to seek treatment from the professional or agency of your choice after your discharge from this facility.

*If you believe your rights have been violated, you can contact:*

| **Florida Abuse Hotline** | **Americans with Disabilities Act (ADA)** | **Disability Rights** |
|---|---|---|
| 1-800-96-ABUSE | 1-800-514-0301 (Voice) | Florida |
| 1-800-962-2873 (Voice) | 1-800-514-0383 (TTY) | 1-800-342-0823 (Voice) |
| 1-800-453-5154 (TTY /TTD) | | 1-800-346-4127 (TTY/TTD) |

*This poster can be downloaded from the DCF website at http://www.myflfamilies.com/service-programs/substance-abuse/publications.*
*This poster must be placed next to the telephone used by people receiving services.*

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING: _____ | | |
| | **HL100067** | B. WING _____ | | **C<br>09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N**<br>**SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB000 | Initial Comments<br><br>Unannounced complaint investigations, CCR# 2018012774,<br>CCR# 2018013522, and CCR# 2018010503 were conducted on ... . through ... ... at St. Anthony's Hospital, an acute care hospital located in St. Petersburg, FL.<br><br>St. Anthony's Hospital was not in compliance in accordance with the state licensure requirements, found in Chapter 65E-5, F.A.C. (Florida Administrative Code). License #4215.<br><br>Deficiencies were found at the time of the survey. | BB000 | | |
| BB043 | 65E-5.170(1)(d)-(7) FAC Express & Informed Consent<br><br>Right to Express and Informed Consent<br>(1) Establishment of Consent.<br>(d) In the event there is a change in the ability of a person on voluntary status to provide express and informed consent to treatment, the change shall be immediately documented in the person's clinical record. A person's refusal to consent to treatment is not, in itself, an indication of incompetence to consent to treatment.<br>1. If the person is assessed to be competent to consent to treatment and meets the criteria for involuntary inpatient placement, the facility administrator shall file with the court a petition for involuntary placement. Recommended form CF-MH 3032, ... 05, "Petition for Involuntary Inpatient Placement," which is incorporated by reference and may be obtained pursuant to Rule 65E-5.120, F.A.C., of this rule chapter may be used for this purpose.<br>2. If the person is assessed to be ... , to consent to treatment, and meets the criteria for involuntary inpatient or involuntary outpatient | BB043 | | |

AHCA Form 3020-0001

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE          TITLE          (X6) DATE

| Agency for Health Care Administration | | | |
|---|---|---|---|
| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>HL100067 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING: _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>C<br>09/13/2018 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| ST ANTHONYS HOSPITAL | 1200 SEVENTH AVE N<br>SAINT PETERSBURG, FL 33705 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 1<br><br>placement, the facility administrator shall expeditiously file with the court both a petition for the adjudication of incompetence to consent to treatment and appointment of a guardian advocate, and a petition for involuntary inpatient or involuntary outpatient placement. Upon determination that a person is ___ _, ___ _ to consent to treatment the facility shall expeditiously pursue the appointment of a duly authorized substitute decision-maker that can make legally required decisions concerning treatment options or refusal of treatments for the person. Recommended forms CF-MH 3106, ___ 05, "Petition for Adjudication of Incompetence to Consent to Treatment and Appointment of a Guardian Advocate," which is incorporated by reference may be obtained pursuant to Rule 65E-5.120, F.A.C., of this rule chapter, and CF-MH 3032, "Petition for Involuntary Inpatient Placement," as referenced in subparagraph 65E-5.170(1)(d)1., F.A.C., or CF-MH 3130, "Petition for Involuntary Outpatient Placement," which is incorporated by reference and may be obtained pursuant to Rule 65E-5.120, F.A.C., of this rule chapter may be used for this purpose.<br><br>(e) Competence to provide express and informed consent shall be established and documented in the person's clinical record prior to the approval of a person's transfer from involuntary to voluntary status or prior to permitting a person to consent to his or her own treatment if that person had been previously determined to be ___ , ___ to consent to treatment. Recommended form CF-MH 3104, "Certification of Person's Competence to Provide Express and Informed Consent," as referenced in paragraph 65E-5.170(1)(c), F.A.C., properly completed by a physician may be used for this purpose. | BB043 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: HL100067 | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 09/13/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| ST ANTHONYS HOSPITAL | 1200 SEVENTH AVE N SAINT PETERSBURG, FL 33705 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 2 | BB043 | | |
| | (f) Any guardian advocate appointed by a court to provide express and informed consent to treatment for the person shall be discharged and a notice of such guardian advocate discharge provided to the court upon the establishment and documentation that the person is competent to provide express and informed consent. | | | |
| | (g) If a person entering a designated receiving or treatment facility has been ... , ... under Chapter 744, F.S., as described in Section 394.455(14), F.S., express and informed consent to treatment shall be sought from the person's guardian. | | | |
| | (h) If a person entering a designated receiving or treatment facility has been determined by the attending physician to be ... , ... to consent to treatment as defined in Section 394.455(15), F.S., express and informed consent to treatment shall be expeditiously sought by the facility from the person's guardian advocate or health care surrogate or proxy. | | | |
| | (i) A copy of the letter of guardianship, court order, or advance directive shall be reviewed by facility staff to ensure that the substitute decision-maker has the authority to provide consent to the recommended treatment on behalf of the person. If the facility relies upon the expression of express and informed consent for person's treatment from a substitute decision-maker, a copy of this documentation shall be placed in the person's clinical record and shall serve as documentation of the substitute decision-maker's authority to give such consent. With respect to a health care proxy, where no advance directive has been prepared by the | | | |

PRINTED: 11/01/2018
FORM APPROVED

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  HL100067 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING: _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  C 09/13/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  ST ANTHONYS HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE  1200 SEVENTH AVE N  SAINT PETERSBURG, FL  33705 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 3  person, facility staff shall document in the person's clinical record that the substituted decision-maker was selected in accordance with the list of persons and using the priority set out in Section 765.401, F.S. When a health care surrogate or proxy is used, the facility shall immediately file a petition for the appointment of a guardian advocate.  (2) Authorization for Treatment. (a) Express and informed consent, including the right to ask questions about the proposed treatment, to receive complete and accurate answers to those questions, and to negotiate treatment options, shall be obtained from a person who is competent to consent to treatment. If the person is   . . , . . .  to consent to treatment, such express and informed consent shall be obtained from the duly authorized substitute decision-maker for the person before any treatment is rendered, except where emergency treatment is ordered by a physician for the safety of the person or others. Chapter 394, Part I, F.S., and this rule chapter govern mental health treatment. Medical treatment for persons served in receiving and treatment facilities and by other service providers are governed by other statutes and rules. (b) A copy of information disclosed while attempting to obtain express and informed consent shall be given to the person and to any substitute decision-maker authorized to act on behalf of the person. (c) When presented with an event or an alternative which requires express and informed consent, a competent person or, if the person is   . . , . . .  to consent to treatment, the duly authorized substitute decision-maker shall provide consent to treatment, refuse consent to | BB043 | | |

AHCA Form 3020-0001
STATE FORM                                    6699        T4D711                    If continuation sheet  4 of 22

| Agency for Health Care Administration STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: HL100067 | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 09/13/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER ST ANTHONYS HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE 1200 SEVENTH AVE N SAINT PETERSBURG, FL 33705 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 4

treatment, negotiate treatment alternatives, or revoke consent to treatment. Recommended forms CF-MH 3042a, .05, "General Authorization for Treatment Except , , Medications," which is incorporated by reference and may be obtained pursuant to Rule 65E-5.120, F.A.C., of this rule chapter, and CF-MH 3042b, .05, "Specific Authorization for , , , , Medications," which is incorporated by reference and may be obtained pursuant to Rule 65E-5.120, F.A.C., of this rule chapter may be used as documentation of express and informed consent and any decisions made pursuant to that consent. If used, recommended form CF-MH 3042a, "General Authorization for Treatment Except , , Medications," as referenced in paragraph 65E-5.170(2)(c), F.A.C., shall be completed at the time of admission to permit routine medical care, , , assessment, and other assessment and treatment except , , , medications. The more specific recommended form CF-MH 3042b, "Specific Authorization for , , Medications," as referenced in paragraph 65E-5.170(2)(c), F.A.C., or its equivalent, shall be completed prior to the administration of any , , , , Medications, except under an emergency treatment order. The completed forms, or equivalent documentation, shall be retained in the person's clinical record. (d) No facility or service provider shall initiate any mental health treatment, including , , medication, until express and informed consent for , , treatment is sought from a person legally qualified to give it, except in instances where emergency treatment is ordered by a physician to preserve the immediate safety of the person or others. (3) Receiving and treatment facilities shall | BB043 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | HL100067 | A. BUILDING: _____<br>B. WING _____ | C<br>09/13/2018 |

NAME OF PROVIDER OR SUPPLIER

**ST ANTHONYS HOSPITAL**

STREET ADDRESS, CITY, STATE, ZIP CODE

**1200 SEVENTH AVE N
SAINT PETERSBURG, FL 33705**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 5<br><br>request copies of any advance directives completed by persons admitted to the facilities, from the person or the person's family or representative.<br>(4) In addition to any other requirements, at least the following must be given to the person before express and informed consent will be valid:<br>(a) Identification of the proposed , , , medication, together with a plain language explanation of the proposed dosage range, the frequency and method of administration, the recognized short-term and long-term side effects, any contraindications which may exist, clinically significant interactive effects with other medications, and similar information on alternative medications which may have less severe or serious side effects.<br>(b) A plain language explanation of all other treatments or treatment alternatives recommended for the person.<br>(5) If a change in , , , , , medication is recommended which is not included in the previously signed CF-MH 3042b, "Specific Authorization for , , Medications" form, as referenced in paragraph 65E-5.170(2)(c), F.A.C., after an explanation and disclosure of the altered treatment plan is provided by the physician express and informed consent must be obtained from the person authorized to provide consent and be documented in the person's clinical record prior to the administration of the treatment or , , , medication.<br>(6) The facility or service provider staff shall explain to a guardian, guardian advocate, or health care surrogate or proxy, the duty of the substitute decision-maker to provide information to the facility or service provider on how the substitute decision-maker may be reached at any time during the person's hospitalization or | BB043 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | **HL100067** | B. WING _____ | C **09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N** **SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 6

treatment to provide express and informed consent for changes of treatment from that previously approved.
(7) Electroconvulsive treatment may be recommended to the person or the person's substitute decision-maker by the attending physician. Such recommendation must also be concurrently recommended by at least one other physician not directly involved with the person's care who has reviewed the person's clinical record. Such recommendation shall be documented in the person's clinical record and shall be signed by both physicians. Recommended form CF-MH 3057,    . 05, "Authorization for Electroconvulsive Treatment," which is incorporated by reference and may be obtained pursuant to Rule 65E-5.120, F.A.C., of this rule chapter may be used for this purpose. If used, this form shall also be signed by the person, if competent, or by the guardian advocate, if previous court approval has been given, or by the guardian where the person has been found by the court to be   ., . ...... ., or by the health care surrogate if the person had expressly delegated such authority to the surrogate in the advance directive. Express and informed consent from the person or his or her substitute decision-maker, as required by Section 394.459(3), F.S., including an opportunity to ask questions and receive answers about the procedure, shall be noted on or attached to recommended form CF-MH 3057, "Authorization for Electroconvulsive Treatment," as referenced in subsection 65E-5.170(7), F.A.C., or its equivalent, as documentation of the required disclosures and of the consent. Each signed authorization form is permission for the person to receive a series of up to, but not more than, the stated number of electroconvulsive treatments | BB043 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>HL100067 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING: _____<br><br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>C<br>09/13/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>ST ANTHONYS HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>1200 SEVENTH AVE N<br>SAINT PETERSBURG, FL 33705 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 7<br><br>identified on the form. Additional electroconvulsive treatments require additional written authorization. The signed authorization form shall be retained in the person's clinical record and shall comply with the provisions of Section 458.325, F.S.<br><br>This Statute or Rule is not met as evidenced by: Based on policy review, medical record review and staff interview it was determined the facility failed obtain consent for treatment, treatment changes and medical decisions from the patient's healthcare proxy for one (#3) of 3 medical records sampled.<br><br>Findings included:<br><br>On ___ at 9:30 AM a review of Patient #3's emergency department (ED) physician history and physical (H&P) dated ___ at 6:26 PM, revealed Patient #3 was brought to the facility by emergency medical services (___) after being ___ ___ ___. The patient was admitted to the facility on ___ and placed on the behavioral health unit (BHU) on ___ ___ ___ at 5:11 PM.<br><br>A review of the facility policy entitled, "Health Care Surrogate or Proxy Regarding Inpatients Deemed ___ ___ in Behavioral Health Unit," #300.177.18, revised ___, showed a health care proxy is a competent adult who has not been expressly designated by a advance directive, to make health care decisions for a ___ ___ ___ ___, ___ individual, but is authorized, in accordance with Florida Statue, to make health care decisions for such individual.<br><br>A review of Patient #3's medical record document, Certification of Persons Competence to Provide Expressed and Informed Consent, | BB043 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING: _____ | | |
| | **HL100067** | B. WING _____ | | C **09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N** **SAINT PETERSBURG, FL  33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 8 | BB043 | | |
| | dated  . . . . . .  at 8:00 AM, showed the facility psychiatrist deemed the patient to be        , to provide express and informed consent to voluntary admission, and thus is          ,          to provide express and informed consent to treatment. | | | |
| | A review of Patient #3's medical record document entitled, Certification of Person's Incompetence to Consent to Treatment and Notification of Health Care Surrogate/Proxy, dated          at 9:45 AM, showed the box was marked which showed the patient had not executed an advance directive or designated a surrogate, but the following individual, in the following order of priority will be asked to serve as the health care proxy. The seven boxes of legal priority were left unmarked, which included the patient's mother who was the patient's designated healthcare surrogate/proxy. | | | |
| | A review of Patient #3's medical record showed that on  . . . . . .  at 2:50 PM, the facility contacted Advance Advocacy & Representative Inc. (AAR), a contracted company with the facility, for a consent for treatment. The document showed an employee from AAR signed the consent and listed themselves as the patient's healthcare proxy. | | | |
| | An interview with the patient's healthcare proxy/surrogate on          at 3:45 PM, revealed she had not been asked or called for general consent or consulted for treatment changes for Patient #3 during his admission from  . . . . . .  through          . | | | |
| | An interview with the behavioral health unite (BHU) nurse manager on  . . . . . .  at 2:10 PM, confirmed there was no documentation in the | | | |

AHCA Form 3020-0001
STATE FORM

| Agency for Health Care Administration | | | |
|---|---|---|---|
| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: HL100067 | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 09/13/2018 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| ST ANTHONYS HOSPITAL | 1200 SEVENTH AVE N SAINT PETERSBURG, FL 33705 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB043 | Continued From page 9 subject patient's medical record as to why the representative/health care proxy was changed to AAR on ＿＿＿＿. The BHU nurse manager also confirmed there was no documentation in the medical record of efforts by staff to obtain the patient's healthcare proxy's signature for the consent for treatment. | BB043 | | |
| BB044 | 65E-5.1703 FAC Emergency Treatment Orders - ＿, ＿＿, Meds Emergency Treatment Orders for the Administration of ＿,＿＿＿, Medications. (1) An emergency treatment order shall be consistent with the least restrictive treatment interventions, including the emergency administration of ＿,＿ ＿＿,＿ medications or the emergency use of ＿＿＿＿ or ＿＿＿. Use of ＿＿＿＿＿ or ＿＿＿ in an emergency situation is addressed in subparagraph 65E-5.180(7)(a)3., F.A.C., and is not addressed in this rule. This rule pertains only to the use of ＿, ＿,＿＿,＿ medication in an emergency situation. (a) The issuance of an emergency treatment order requires a physician's review of the person's condition for causal medical factors, such as insufficiency of ＿,＿,＿＿,＿ medication ＿＿＿ levels, as determined by drawing a sample; medication interactions with ＿,＿＿＿,＿ or other medications; side effects or adverse reactions to medications; organic, ＿＿＿＿ or medication based ＿＿＿ imbalances or toxicity; or other biologically based or influenced symptoms. (b) All emergency treatment orders may only be issued by a physician licensed under the authority of Chapter 458 or 459, F.S. (c) The physician must review, integrate and address such ＿＿＿＿ imbalances in the | BB044 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | **HL100067** | B. WING _____ | C **09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N** **SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB044 | Continued From page 10

issuance of an emergency treatment order.
(d) The use of an emergency treatment order must be consistent with the least restrictive treatment requirements, and, absent more appropriate interventions, an emergency treatment order is for immediate administration of rapid response , , , . . . , . medications to a person to expeditiously treat symptoms, that if left untreated, present an immediate danger to the safety of the person or others.
(2) An emergency treatment order for , , , medication supersedes the person's right to refuse , , . . . , . medication if based upon the physician's assessment that the individual is not capable of exercising voluntary control over his or her own , , . . . behavior and that these uncontrolled symptoms and behavior are an imminent danger to the person or to others in the facility. When emergency treatment with , , . . . , medication is ordered for a minor or an . . , . . . . , or . . . , , . adult, facility staff shall document attempts to promptly contact the guardian, guardian advocate, or health care surrogate or proxy to obtain express and informed consent for the treatment in advance of administration where possible and if not possible, as soon thereafter as practical.
(3) The physician's initial order for emergency treatment may be by telephone but such a verbal order must be reduced to writing upon receipt and signed by a physician within 24 hours.
(4) Each emergency treatment order shall only be valid and shall be authority for emergency treatment only for a period not to exceed 24 hours.
(5) The need for each emergency treatment order must be documented in the person's clinical record in the progress notes and in the section | BB044 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **HL100067** | A. BUILDING: _____<br>B. WING _____ | | C<br>**09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N**<br>**SAINT PETERSBURG, FL  33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB044 | Continued From page 11<br><br>used for physician's orders and must describe the specific behavior which constitutes a danger to the person or to others in the facility, and the nature and extent of the danger posed.<br>(6) Upon the initiation of an emergency treatment order the facility shall, within two court working days, petition the court for the appointment of a guardian advocate pursuant to the provisions of Section 394.4598, F.S., to provide express and informed consent, unless the person voluntarily withdraws a revocation of consent or requires only a single emergency treatment order for emergency treatment.<br>(7) If a second emergency treatment order is issued for the same person within any 7 day period, the petition for the appointment of a guardian advocate pursuant to the provisions of Section 394.4598, F.S., to provide express and informed consent shall be filed with the court within 1 court working day.<br>(8) While awaiting court action, treatment may be continued without the consent of the person, but only upon the daily written emergency treatment order of a physician who has determined that the person's behavior each day during the wait for court action continues to present an immediate danger to the safety of the person or others and who documents the nature and extent of the emergency each day of the specific danger posed. Such orders may not be written in advance of the demonstrated need for same.<br>(9) To assure the safety and rights of the person, and since emergency treatment orders by a physician absent express and informed consent are permitted only in an emergency, any use of , , , medications other than rapid response , , , , , , medications requires a detailed and complete justification for the use of such medication. Both the nature and extent of | BB044 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | HL100067 | A. BUILDING: _____ <br> B. WING _____ | C <br> 09/13/2018 |

NAME OF PROVIDER OR SUPPLIER

**ST ANTHONYS HOSPITAL**

STREET ADDRESS, CITY, STATE, ZIP CODE

**1200 SEVENTH AVE N**
**SAINT PETERSBURG, FL  33705**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB044 | Continued From page 12 <br><br> the imminent emergency and any orders for the continuation of that medication must be clearly documented daily as required above. <br><br> This Statute or Rule  is not met as evidenced by: Based on policy review, medical record review, and staff interview it was determined the facility failed to perform the following to obtain consent for , , , , , , , , medications administered and document the clinical need for one (#3) of 5 medical records sampled. <br><br> Findings included: <br><br> On , , , , ,  at 2:20 PM a review of the facility policy entitled, "Informed Consent for , , , , , ,  Medications," #300.177.65, reviewed , , , , , , , showed to protect the rights of individuals served for consenting treatment, specifically , , ,  ,  medications...prior to the administration of the medication, the Specific Authorization for , , ,  Medication form must be signed by the healthcare proxy prior to provision of any treatments...the substitute decision maker must be provided with sufficient information by the physician prescribing the medication, in order to make an informed consent. This includes the following information: <br> a. Reasons for taking the medication, including the likelihood improving or not improving without such medication, and the voluntary patients...proxy has the right to withdraw consent at any time. <br> b. Reasonable alternative treatments available if any. <br> c. Type, range of frequency and amount (including as needed (PRN) orders), method (oral or injections) and duration of taking the medications. <br> d. Side effect of the mediation which may occur. | BB044 | | |

AHCA Form 3020-0001
STATE FORM                                             nsw          T4D711                    If continuation sheet  13 of 22

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION A. BUILDING: _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | **HL100067** | B. WING _____ | C **09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N** **SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB044 | Continued From page 13

e. Approximate length of care.

On . . . . . at 9:30 AM a review of the subject patient's medical record emergency department (ED) physician note dated . . . . . . at 6:26 PM revealed the subject patient was brought to the facility by emergency medical services ( . . . ) after being                   at the behavioral health home where he resided. A review of the ED physician note indicated the patient's parent and physician had been in the . . . . . . . . . . g exactly what medication to give the patient for a prolonged period. The patient's mother, who was also the patient's healthcare proxy (HP), indicated the subject patient "did not react well" to . . . . . and did NOT want him to be given . . . . . . The parents informed the ED physician that he reacted even worse to . . .

A review of the ED physician orders dated . . . . . . at 8:57 PM showed . . . . .
( , , )10 mg             , ( ) x 2 doses,  . . . ( , , . . . , . ) 5 mg    x 1 and          ,  ( , , , ) 2 mg    had been ordered.

A review of the ED medication administration record (MAR) dated        . revealed the patient was given two , , . . . , . medications;
     ,      2 mg    at 9:59 PM and          10      at 9:18 PM.

A review of the Specific Authorization for    , . . . . .  Medications failed to reveal the presence of a consent for the . . . . . or    , .  .

A review of the ED physician orders dated . . . . . . failed to reveal the presence of an emergency treatment order (ETO) for . . . , | BB044 | | |

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | | A. BUILDING: _____ | |
| | **HL100067** | B. WING _____ | **C 09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N** **SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB044 | Continued From page 14 | BB044 | | |
| | . . . . . . . . or . . . . . There was no documentation in physician progress notes indicating the specific behavior which constituted a danger to the person or to others in the facility, and the nature and extent of the danger posed that would indicate an ETO was warranted. | | | |
| | An interview with the healthcare proxy on . . . . . . . . . at 3:45 PM, revealed she adamantly told the physician and staff her son was NOT to receive . . . . . . or . . . . . | | | |
| | A review of the inpatient medication administration record (MAR) for the Patient #3 showed the following . . . . . . . . . . . were administered from          through          . | | | |
| | . . . . . . . . 2 mg    at 12:53 AM . . . . . .    50 mg    9:43 AM | | | |
| | . . . . . . . . . . 50 mg    at 11:45 AM . .    1 mg    at 12:03 PM . . . . . . . . .    50 mg    at 2:52 AM | | | |
| | . . . . . . . . .    1 mg    given at 4:57 AM . . . . . . . . . .    4.01 ml/hr.    continuous drip for sedation started and ran for 12 hours. . . . . . . . .    10 mg    at 3:14 AM Benzotropine 1 mg tab at 6:48 AM | | | |
| | Thorazine 100 mg    given at 1:30 PM . . . . . .    50 mg tab given at 8:24 PM . . . . . . . .    30 mg tab given at 8:24 PM | | | |
| | . . . . . . . . .    30 mg tab given at 8:55 PM | | | |

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>HL100067 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING: _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>C<br>09/13/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>ST ANTHONYS HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE<br><br>1200 SEVENTH AVE N<br>SAINT PETERSBURG, FL 33705 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB044 | Continued From page 15<br><br>Thorazine 50 mg    given at 5:31 PM<br><br>. . . . .<br>      50 mg tab given at 7:45 PM<br>      30 mg tab given at 7:45 PM<br><br>. . . . . . .<br>      50 mg tab given at 9:13 PM<br>      30 mg tab given at 9:13 PM<br><br>. . . . . .<br>      ER 1,000 mg tab given at 10:10 PM<br>      30 mg tab given at 10:10 PM<br><br>A review of the physician orders dated . . . . . through           failed to reveal an ETO for the . . . . . . . . administered.<br><br>A review of the consents for . . . . . . . . . medications from           through           failed to revealed a consent for any of the administered . . . . . .<br><br>An interview with the behavioral health unit nurse manager on . . . . . . at 2:45 PM confirmed the findings in the medical record. | BB044 | | |
| BB053 | 65E-5.330(4) FAC Training Plan - Mandatory<br>. . . . .<br><br>Training<br>(4) A plan shall be developed and implemented providing for the mandatory training for employees, emergency . . . . , . . and physicians in the . . . . . . . , relative to their positions and responsibilities, and any implementing local coordination agreements or protocols. | BB053 | | |

AHCA Form 3020-0001
STATE FORM                                                  nnn                    T4D711                              If continuation sheet 16 of 22

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | | A. BUILDING: _____ | |
| | HL100067 | B. WING _____ | C 09/13/2018 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| ST ANTHONYS HOSPITAL | 1200 SEVENTH AVE N SAINT PETERSBURG, FL 33705 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB053 | Continued From page 16 | BB053 | | |

This Statute or Rule is not met as evidenced by:
Based on medical record review and staff interview it was determined the facility failed to provide mandatory _ _ _ _ training for emergency (ER) physicians.

Findings included:

On ___ at 9:30 AM a review of the subject patient's medical record emergency department (ED) physician note dated ___ at 6:26 PM revealed the subject patient was brought to the facility by emergency medical services ( ) after being _ _ _ _ _ at the behavioral health home where he resided.

A review of the ED physician orders dated _ _ _ _ at 8:57 PM showed the following _, _ _ _, were ordered: ___ mg _ _ _ _ _, ( ) x 2 doses, _ _ _ 5 mg x 1 and ___, 2 mg had been ordered.

A review of the ED nursing medication administration record (MAR) revealed the patient was administered two _, _, _ _, medications; _ _ _ _, 2 mg at 9:59 PM and _ _ _ _ 10 at 9:18 PM.

A review of the consent for Specific Authorization for _ _ _ _ _, Medications failed to reveal the presence of a consent for ___ or ___, _.

A review of the ED physician orders failed to reveal the presence of an emergency treatment order (ETO) for _, _, _ or _ _ _. There was no documentation in physician progress notes indicating the specific behavior which constituted a danger to the person or to others in the facility, and the nature and extent of

PRINTED: 11/01/2018
FORM APPROVED

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | | A. BUILDING: _____ | |
| | **HL100067** | B. WING _____ | C 09/13/2018 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N** **SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB053 | Continued From page 17 | BB053 | | |
| | the danger posed that would indicate an ETO was warranted. | | | |
| | On ___ at 2:50 PM, an interview was conducted with the ED Medical Director physician. The physician was asked if he received ___ training. The physician stated, "I have not had any ___ training and I am not required to have any training." The physician was asked how he keeps current with the state of Florida ___ Regulations. The physician stated, "I assume if there were any changes I would be sent education." The physician was asked if he knew if he had any education related to ___ training in his personnel file. The physician stated, "I don't know you would have to check." The physician was asked if he had the authority to administer ___ to involuntarily ___ patients with an ETO or consent. The physician stated, "if they tell me they take ___ , then I will give them what they take." The physician was asked if the patient is ___ and ___ and they tell you they take ___; do you give them this medication without an ETO or consent? The physician stated, "yes." | | | |
| | On ___ at 1:30 PM, an interview with the Risk Manager ( ___ ) revealed the ED physicians do not receive ___ training on hire or annually. The ___ asked if the ED Medical Director had evidence of ___ training in his personnel file. The ___ he did not. | | | |
| BB097 | 394.4597(2) FS ___ 's Representative - Involuntary Admissions | BB097 | | |
| | Persons to be notified; patient's representative. (2) INVOLUNTARY PATIENTS.- | | | |

AHCA Form 3020-0001
STATE FORM                                      rose          T4D711                If continuation sheet 18 of 22

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | **HL100067** | A. BUILDING: _____<br>B. WING _____ | C<br>**09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N**<br>**SAINT PETERSBURG, FL  33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB097 | Continued From page 18 | BB097 | | |
| | (a) At the time a patient is admitted to a facility for involuntary examination or placement, or when a petition for involuntary placement is filed, the names, addresses, and telephone numbers of the patient's guardian or guardian advocate, or representative if the patient has no guardian, and the patient's attorney shall be entered in the patient's clinical record.<br>(b) If the patient has no guardian, the patient shall be asked to designate a representative. If the patient is unable or unwilling to designate a representative, the facility shall select a representative.<br>(c) The patient shall be consulted with regard to the selection of a representative by the receiving or treatment facility and shall have authority to request that any such representative be replaced.<br>(d) When the receiving or treatment facility selects a representative, first preference shall be given to a health care surrogate, if one has been previously selected by the patient. If the patient has not previously selected a health care surrogate, the selection, except for good cause documented in the patient's clinical record, shall be made from the following list in the order of listing:<br>1. The patient's spouse.<br>2. An adult child of the patient.<br>3. A parent of the patient.<br>4. The adult next of kin of the patient.<br>5. An adult friend of the patient.<br>(e) The following persons are prohibited from selection as a patient's representative:<br>1. A professional providing clinical services to the patient under this part.<br>2. The licensed professional who initiated the involuntary examination of the patient, if the examination was initiated by professional certificate. | | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>HL100067 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING: _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>C<br>09/13/2018 |
|---|---|---|---|

Agency for Health Care Administration

| NAME OF PROVIDER OR SUPPLIER<br><br>ST ANTHONYS HOSPITAL | STREET ADDRESS, CITY, STATE, ZIP CODE<br>**1200 SEVENTH AVE N**<br>**SAINT PETERSBURG, FL  33705** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB097 | Continued From page 19<br><br>3. An employee, an administrator, or a board member of the facility providing the examination of the patient.<br>4. An employee, an administrator, or a board member of a treatment facility providing treatment for the patient.<br>5. A person providing any substantial professional services to the patient, including clinical services.<br>6. A creditor of the patient.<br>7. A person subject to an injunction for protection against domestic violence under s. 741.30, whether the order of injunction is temporary or final, and for which the patient was the petitioner.<br>8. A person subject to an injunction for protection against repeat violence, stalking, . . . . violence, or dating violence under s. 784.046, whether the order of injunction is temporary or final, and for which the patient was the petitioner.<br><br><br>This Statute or Rule  is not met as evidenced by:<br>Based on policy review, medical record review and staff interview it was determined the facility failed honor the patient's choice of representatives and document in the medical record the patient representative for one (#3) of 3 medical records sampled.<br><br>Findings included:<br><br>On . . . . . at 9:30 AM a review of  Patient #3's emergency department (ED) physician history and physical (H&P) dated . . . . . at 6:26 PM, revealed Patient #3 was brought to the facility by emergency medical services (_ . _) after being . The patient was admitted to the facility on . . . . . and placed on the behavioral health unit (BHU) on            at 5:11 PM.<br><br>A review of the facility policy entitled, "Express | BB097 | | |

AHCA Form 3020-0001
STATE FORM                                                                 nsse              T4D711                              If continuation sheet  20 of 22

PRINTED: 11/01/2018
FORM APPROVED

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | | A. BUILDING: _____ | |
| | **HL100067** | B. WING _____ | C<br>**09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N**<br>**SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB097 | Continued From page 20<br><br>and Informed Consent.", #300.177.21, revised ____ , showed if a patient is found to be __ __ ,___ to consent to treatment, express and informed consent to treatment is sought from the patient's legal representative.<br><br>A review of Patient #3's medical record document, Certification of Persons Competence to Provide Expressed and Informed Consent, dated ____ at 8:00 AM, showed the facility psychiatrist deemed the patient to be __ __ ,___ to provide express and informed consent to voluntary admission, and thus is __ __ ,___ to provide express and informed consent to treatment.<br><br>A review of Patient #3's medical record document entitled, Notice of Person's Admission For Involuntary Examination, showed the facility failed to fill out the document and left blank the name of the representative, the patient's name, where the patient was admitted to, the facility address, the facility phone number, signature of the facility Administrator. The document showed a person may choose his representative. Only when the person (patient) is unable or unwilling to designate a representative, the facility shall select a representative. The facility must choose the representative from a legal list in order of priority: The top of the list showed the patient's healthcare surrogate is listed as priority number one. The document failed to mark the box showing the patient's representative, as well as the date, method, time and who provided the representative with a copy.<br><br>A review of Patient #3's medical record document entitled, Patient Agreement and Consent for Facility Services, dated _ _ _ _ _ at 5:58 PM, showed the patient refused to sign due to | BB097 | | |

AHCA Form 3020-0001

STATE FORM            nose     T4D711         If continuation sheet 21 of 22

Agency for Health Care Administration

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING: _____ | | |
| | **HL100067** | B. WING _____ | | **C
09/13/2018** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **ST ANTHONYS HOSPITAL** | **1200 SEVENTH AVE N
SAINT PETERSBURG, FL 33705** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETE DATE |
|---|---|---|---|---|
| BB097 | Continued From page 21 | BB097 | | |
| | , ., ., . . . The facility failed to contact the patient's healthcare representative for a consent for treatment. On . . . . . . at 11:50 PM, the facility once again attempted to have the patient, deemed . . . , . . . . to consent, sign the consent. Once again, the patient's representative was not contacted for consent. On . . . . . at 2:50 PM, the facility contacted Advance Advocacy & Representative Inc. (AAR), a contracted company with the facility, and for a consent for treatment. The document showed an employee from AAR signed the consent and listed themselves as the patient's healthcare proxy. | | | |
| | An interview with the patient's representative and healthcare proxy/surrogate on . . . . . . at 3:45 PM, revealed she had not been asked or called for consent for Patient #3 during his admission from . . . . . . through . . | | | |
| | An interview with the behavioral health unit (BHU) nurse manager on . . . . . . at 2:10 PM, confirmed there was no documentation in the subject patient's medical record as to why the patient's representative/health care proxy was changed to AAR on . . . . . . . The BHU nurse manager also confirmed there was no documentation in the medical record of efforts by staff to obtain the patient's healthcare representative signature for the consent for treatment. | | | |

AHCA Form 3020-0001
STATE FORM                                      nose          T4D711                          If continuation sheet  22 of 22